

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-19-2009

# Cekaj v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2660

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Cekaj v. Atty Gen USA" (2009). *2009 Decisions.* Paper 1352.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1352

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 08-2660
_____

BRUNO CEKAJ,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

_____
On Review of a Decision of the
Board of Immigration Appeals
(Agency No. A098 272 475)
Immigration Judge:  Honorable Henry S. Dogin

_____


Submitted Under Third Circuit LAR 34.1(a)
May 5, 2009

Before: BARRY, SMITH and GARTH, Circuit Judges

(Filed: May 19, 2009)


_____
OPINION
_____


PER CURIAM

Petitioner, Bruno Cekaj, a native and citizen of Albania, entered the United States

in November 2003 without inspection in violation of INA § 212(a)(6)(A)(i).  Removal

proceedings were initiated in August of the following year.  Cekaj admitted the

allegations in the Notice to Appear, conceded that he was removable, and thereafter

renewed his previous requests for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") which had been filed in March 2004.

At the removal hearing, Cekaj (then 19 years old) described his participation as a member in the Youth Forum of the Albanian Democratic Party, the ensuing threats he received, and a particular incident of violence rooted in his party membership. Cekaj testified that he served as a poll watcher for the Democratic Party on October 12, 2003, during which time he observed numerous election irregularities. The following day, several police officers came to Cekaj's home and asked him to accompany them to the police station under the pretense of "speaking about some bargain." When Cekaj arrived at the station, he was told that he had to sign a statement attesting to the fact that the elections held were done so properly. Cekaj refused to sign and requested permission to go because he was tired. He was apparently allowed to leave. Two days later, on October 15, 2003, Cekaj was attacked near his home. Three individuals – two uniformed officers and a third person who was wearing street clothing – warned Cekaj to discontinue his support for the Democratic Party, and then proceeded to cut him and beat him until he was unconscious. Cekaj was helped home by his cousins, and his father had him attended to by a physician who made a house call. The physician treated the cuts to his head and chin (which, according to Cekaj, did not require stitches), and Cekaj recuperated in his bed at home during the following two weeks. It was during this time that his father arranged for Cekaj to leave Albania for the United States.

At the conclusion of the hearing, the Immigration Judge (IJ) denied relief, finding

2

that (i) while Cekaj qualified for political asylum based on his testimony regarding the October 15th incident and the evidence presented regarding his treatment by a physician, (ii) the country conditions in Albania had sufficiently changed such that Cekaj, even if he had suffered political persecution in the past, no longer had a reasonable fear of future persecution given the Democrats' return to power in 2005. As evidenced by his father's uneventful party membership from 1991 to 1997, the IJ concluded that Cekaj had no reason to fear political persecution while the Socialists are the minority and that, even if the Socialists were in control at the local level, Cekaj and his family could simply relocate to Tirana where the Democratic Party was back in power. Accordingly, the IJ denied Cekaj's application for political asylum. Given the higher standard for withholding of removal, the IJ denied that application as well. In light of the now-Democratic government, it was also concluded there was no likelihood of torture and Cekaj's CAT request was thus denied.

The Board of Immigration Appeals (BIA) dismissed Cekaj's appeal in an order issued on March 30, 2007. After commenting that the IJ's decision regarding the alleged persecution suffered by Cekaj was "not clear,"[1] the BIA seemingly found that the single incident described by petitioner did not amount to persecution. The BIA went on to find that Cekaj likewise did not have a well-founded fear of persecution given, inter alia, the

---

[1] The IJ's finding was made somewhat ambiguous by his subsequent statements that, even assuming the possibility that Cekaj was "man-handled," he could see no scar on Cekaj where he claims to have been cut, and there certainly was no "significant damage" and no "emotional trauma." See IJ's Oral Decision at 10, Admin. Rec. at 74.

current circumstances of Albania as documented in the 2006 Department of State Country Report on Human Rights Practices ("Country Report") and 2006 Department of State Profile of Asylum Claims and Country Conditions ("Profile"), the contents of which the BIA took administrative notice. See 8 C.F.R. § 1003.1(d)(3)(iv); Zubeda v. Ashcroft, 333 F.3d 463 (3d Cir. 2003).

While the reports revealed that problems with crime and corruption persist, the BIA concluded that the reports also noted the following: there have been no outbreaks of political violence; neither the government nor the major political parties engaged in policies of abuse or coercion against their political opponents; and there is no indication of systemic political persecution. See BIA Order at 2, Admin. Rec. at 35, citing Profile at 3. The BIA further noted that there were no reports of arbitrary or unlawful killings by the government or its agents, no politically motivated disappearances, no political prisoners or detainees, and that the government cooperated with human rights groups and took steps to fight corruption within the government as well as the police and security forces. Id., citing Country Report at 1-3, 5, 8-9. The BIA further noted that Cekaj's father (who is active in the Democratic Party) and the rest of his family still reside in Albania. The BIA thus found that Cekaj's subjective fear of returning to Albania is not objectively reasonable and that, as such, he does not have a well-founded fear of persecution. Finally, the BIA noted that, aside from the fact that Cekaj made no substantive argument on appeal concerning his eligibility for either withholding of removal or for protection under the CAT, he could not satisfy the higher burden of proof

4

given his failure to establish his eligibility for asylum. Cekaj timely petitioned for review and sought a stay of removal, which the government opposed. See C.A. No. 07-2322. In an order entered on July 3, 2007, this Court denied Cekaj's stay request and a briefing schedule issued.

Prior to the completion of briefing, respondent filed a motion seeking to have the matter remanded to the BIA. Respondent asserted that it was unclear whether the BIA was relying on the IJ's determinations to conclude that petitioner had not demonstrated past persecution. Thus, respondent requested that the BIA be afforded an opportunity to explain, in sufficient detail to allow meaningful judicial review, whether it intended to make a past persecution finding different from the IJ's finding and whether its ultimate determination included the shifting of the burden to the government to rebut any finding of past persecution. The Court granted respondent's motion to remand in an order filed on February 12, 2008. The BIA subsequently issued an order on May 8, 2008, clarifying its earlier opinion. Citing this Court's opinion in Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005), the BIA specifically found that the single incident described by Cekaj did not amount to persecution. The BIA further held that, to the extent the IJ found that Cekaj suffered past persecution, it would reverse that finding and thus the presumption of well-founded fear of persecution did not apply. The BIA, adopting the prior finding set forth in its March 30th order and taking judicial notice of such documents as the 2007 Country Report and the 2006 Profile, thereafter went on to conclude that Cekaj failed to establish eligibility for asylum based on a well-founded fear of persecution. Accordingly, the BIA once again dismissed Cekaj's appeal and this timely petition for review followed.

5

Cejak raises the following allegations of error: 1) the IJ and BIA erred in concluding that only one incident was offered in support of his claim of past persecution; 2) the BIA erred in concluding that Cekaj failed to show a well-founded fear of future persecution after considering current country conditions, the possibility of relocation and the fact that petitioner's father, who is active in the Democratic Party, and his other family members still reside in Albania; and 3) the BIA erred by taking administrative notice of the 2006 Country Report without affording him an opportunity to respond to the information in that report or to submit evidence contrary to the report.

Generally, we have jurisdiction to review the final decision of the BIA under 8 U.S.C. § 1252(a). Where the BIA adopts the IJ's findings and also adds its own comments and reasoning, this Court has jurisdiction to review both opinions. Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). Our review for the most part is highly deferential. We must uphold the agency's findings, including its determination of whether an alien was subject to persecution or has a well-founded fear of persecution, if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (quotation omitted). Indeed, we may not reject these findings "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). See also Kibinda v. Attorney General, 477 F.3d 113, 119 (3d Cir. 2007). Our review of Cekaj's due process challenge, on the other hand, is de novo. See Chong v. District Director, I.N.S., 264 F.3d 378, 386 (3d Cir. 2001).

Initially, we note it appears that Cekaj only appeals the denial of his request for

asylum. Because he provides no argument in support of his withholding of removal and CAT claims, we deem those issues waived. See Lie v. Ashcroft, 396 F.3d 530, 532 n. 1 (3d Cir. 2005). Additionally, while Cekaj takes issue with the IJ's determination that he could successfully relocate upon returning to Albania, respondent is correct in its assertion that the BIA did not adopt this finding. Accordingly, this particular issue is not before us.

We turn now to Cekaj's claim that the BIA and IJ erred in concluding that only one incident was offered in support of his claim of past persecution. The legal precepts underlying Cejak's claim are well established. To establish eligibility for asylum, an applicant must demonstrate past persecution or a well-founded fear of persecution that is both subjectively and objectively reasonable. Singh v. Gonzales, 406 F.3d 191, 195 (3d Cir. 2005). In order to establish eligibility on the basis of past persecution, an applicant must show, inter alia, "an incident, or incidents, that rise to the level of persecution...." Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). We have defined persecution as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993).

The record in the instant case clearly shows that Cekaj was permitted to offer evidence regarding his visit to the police station on October 13th as well as the assault that occurred on October 15th, and that those instances were considered in evaluating his request for relief from removal. See Admin. Rec. at 137-38. As respondent correctly notes, the BIA need not "'write an exegesis on every contention,' but only to show that it has reviewed the record and grasped the [petitioner's] claims. Sevoian v. Ashcroft, 290

7

F.3d 166, 178 (3d Cir. 2002), quoting Mansour v. INS, 230 F.3d 902, 908 (7th Cir. 2000).

Moreover, as we stated in Voci v. Gonzales, 409 F.3d at 615, "[w]hile this Court has not yet drawn a precise line concerning where a simple beating ends and persecution begins, our cases suggest that isolated incidents that do not result in serious injury do not rise to the level of persecution." Although we certainly do not mean to imply that a single physical assault could never support an asylum claim, we would be hard pressed to conclude that the evidence presented on the record in the instant case – a record clearly reviewed by the BIA in rendering its decision – compels reversal of BIA's decision that the physical harm or mistreatment Cekaj suffered did not rise to the level of persecution.

Cekaj's contention that the BIA erred in concluding that he failed to show a well-founded fear of future persecution fares no better. The record does not compel the conclusion that Cejak would be individually singled out for persecution, or that there is a pattern or practice of persecution against members or supporters of the Democratic Party in Albania. See 8 C.F.R. § 1208.13(b)(2)(iii)(A). This is especially true given the current conditions in Albania as set forth in the 2006 and 2007 Country Reports and 2006 Profile relied upon by the BIA. See Ambartsoumian v. Ashcroft, 388 F.3d 85, 89 (3d Cir. 2004) (quoting case law indicating that State Department country reports are "the most appropriate and perhaps best resource on country conditions") (internal quotations omitted). While Cekaj takes issue with the BIA's conclusion in this regard, he does not point to any evidence in the administrative record to sufficiently support such a rebuttal. See Gomez-Zuluaga v. Attorney General, 527 F.3d 330, 340 (3d Cir. 2008)(citing INA § 242(b)(4)(A), 8 U.S.C. § 1252(b)(4)(A), in support of the conclusion that this Court's

8

review is confined to the administrative record); Berishaj v. Ashcroft, 378 F.3d 314, 330 (3d Cir. 2004) (noting Court's obligation to base its review on the contents of the administrative record). Moreover, the BIA properly considered – as an additional factor in the overall analysis of petitioner's asylum claim – the fact that Cekaj's father continues to reside in Albania without significant consequences stemming from his party membership. See Lie, 396 F.3d at 537 ("[W]hen family members remain in petitioner's native country without meeting harm, and there is no individualized showing that petitioner would be singled out for persecution, the reasonableness of a petitioner's well-founded fear of future persecution is diminished.").

Finally, we reject as meritless Cekaj's contention that the BIA erred by taking administrative notice of the 2006 Country Report without affording him an opportunity to respond to the information in that report or to submit evidence contrary to the report, and we dispose of it with little discussion. This Court has recognized that due process protections are afforded to aliens facing removal. See, e.g., Abdulai v. Ashcroft, 239 F.3d 542, 549 (3d Cir. 2001) ("Despite the fact that there is no constitutional right to asylum, aliens facing removal are entitled to due process."). The requirements of due process "depend[ ] on the circumstances of the particular situation." Dia v. Ashcroft, 353 F.3d 228, 239 (3d Cir. 2003) (en banc) (quoting Marincas v. Lewis, 92 F.3d 195, 203 (3d Cir. 1996)). While it would have been preferable for the BIA to have advised Cekaj of its intent to consider the 2006 Country Report and to have afforded him an opportunity to specifically respond to that report, we cannot conclude that the failure to do so resulted in a violation of due process requiring remand given the particulars of this case, i.e., the IJ's

9

original determination with respect to Cekaj's failure to show a well-founded fear of future persecution, the BIA's reference to the 2006 Country Report in its earlier decision and the opportunity afforded petitioner to submit evidence and argument to the BIA after this Court's remand, and given that the facts in the 2006 Country Report of which the BIA took administrative notice do not appear to have been solely dispositive of Cekaj's asylum claim.  See Shao v. Mukasey, 546 F.3d 138, 167 (2d Cir. 2008) (no due process violation where 2007 Profile was not "dispositive" of petitioner's asylum application); cf. Chhetry v. U.S. Dep't of Justice, 490 F.3d 196, 198 (2d Cir. 2007)(compiling cases where noticed facts were dispositive).

Accordingly, given the foregoing, the petition for review is denied.