**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jose Luis RAMIREZ–RAMIREZ,
Defendant–Appellant.**

No. 88–5244.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 5, 1989.

Decided May 25, 1989.

Ezekiel E. Cortez, Aaron & Cortez, San Diego, Cal., for defendant-appellant.

Patrick K. O'Toole, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before FLETCHER, NELSON and NORRIS, Circuit Judges.

NELSON, Circuit Judge:

### OVERVIEW

Appellant Ramirez–Ramirez appeals his conviction for importation of approximately 356 kilograms of cocaine in violation of 21 U.S.C. § 952 and § 960, and possession with intent to distribute approximately 356 kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1). Ramirez–Ramirez claims the government needed to prove that appellant knew he possessed 356 kilograms of cocaine rather than 20–30 pounds of marijuana. We disagree and affirm the district court's conviction.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant Ramirez–Ramirez drove a brown stakebed truck with dual wheels over the Mexican/American border near Campo, California. Upon entering Califor-

nia, the truck triggered a "sensor alert." However, border patrol agents did not stop appellant's truck at first, since they believed it was a "decoy" for a vehicle that would be following and carrying illegal aliens. When no second vehicle appeared, agents radioed for a back-up unit to stop the truck.

Officer Eppen responded to the radio dispatch and stopped the truck. The entire stop lasted only 2–3 minutes, during which time appellant presented his driver's license and alien registration card, and officer Eppen inspected the cab and back of the truck for illegal aliens. Noting nothing suspicious in these locations or appellant's behavior, Officer Eppen allowed appellant to leave.

Meanwhile, the original border patrol agents waited about 10 or 20 minutes for a second vehicle. Seeing none, they proceeded to where the sensor had been triggered. They noted a set of dual tire tracks which appeared to match appellant's truck. The agents then radioed for an additional border patrol unit to stop the truck and gave its description, noting that the driver was suspected of illegal entry from Mexico.

Officer Ecklund responded to this dispatch, located appellant's truck, and stopped appellant. After about fifteen minutes of talking with appellant, glancing around the cab and bed of the truck, and communicating with headquarters, Ecklund informed appellant that he planned to search the truck. Ecklund looked underneath the truck and noticed an unusual compartment with yellow and white plastic behind its frame. Shortly thereafter, appellant started the truck and sped off. A chase ensued and ended about one hundred yards from the Mexican border, where appellant tried to flee on foot.

Appellant was arrested and taken to a Border Patrol station. The truck was completely dismantled and searched. Officers found approximately 356 packages of cocaine, a total of over 356 kilograms, in a secret compartment underneath the bed of the truck. At the station, Agent Unzueta questioned Ramirez after advising him of his constitutional rights and obtaining a waiver. Ramirez–Ramirez originally said he attempted to flee from Ecklund because he had stolen the brown truck near Tecate. He later changed his story, stating he believed there were approximately 20–30 pounds of marijuana under the truck's seat. Ramirez–Ramirez said he was going to be paid $150.00 for driving the truck across the border.

Ramirez–Ramirez was indicted in two counts: importation of approximately 356 kilograms of cocaine in violation of 21 U.S.C. §§ 952, 960, and possession with intent to distribute approximately 356 kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1). Each violation carries a mandatory minimum prison sentence of ten years to life.

On February 3, 1988, the district court addressed two issues, among others, *in limine.* The first issue was whether the government needed to prove that appellant knew the type and amount of the controlled substance in his possession. The second was whether this court's decision in *United States v. Lopez–Martinez,* 725 F.2d 471 (9th Cir.1984), which held that a mistake of fact as to the controlled substance carried was not a defense to knowing possession, applies to this case. The district court found that the government needed to prove only that Ramirez–Ramirez knew he possessed a controlled substance, and the judge accordingly gave the jury a *Lopez–Martinez* instruction.

The jury convicted Ramirez–Ramirez on both counts on February 5, 1988. Appellant was sentenced to fifteen years in custody according to the mandatory minimum sentencing provisions in the statutes. Ramirez–Ramirez is currently serving that sentence.

## DISCUSSION

The central issue in this case is whether the district court's jury instruction misstated the elements of Ramirez–Ramirez's crime and improperly relied on *Lopez–Martinez* in doing so. We review this question of law *de novo* according to *United States*

**774**

*v. Douglass*, 780 F.2d 1472, 1473 (9th Cir.).

■ *Lopez–Martinez* is this court's leading authority for the proposition that a defendant charged with importing and possessing a controlled substance need not know "the exact nature of the substance with which he was dealing." *Lopez–Martinez*, 725 F.2d at 474 (quoting *United States v. Davis*, 501 F.2d 1344, 1345 (9th Cir.1974)). Instead, a defendant can be convicted under § 841 and § 960 if he believes he has *some* controlled substance in his possession.[1] *Id.* at 474–75; *accord United States v. Rea*, 532 F.2d 147, 149 (9th Cir.1976) ("[A]n importer of drugs need not know specifically which drug he or she is importing."); *United States v. Jewell*, 532 F.2d 697, 698 (9th Cir.1976) ("[A] defendant who has knowledge that he possesses a controlled substance may have the state of mind necessary for conviction even if he does not know which controlled substance he possesses.").

Appellant does not contest this firmly established rule of law, but instead tries to distinguish *Lopez–Martinez* on its facts and render the *Lopez–Martinez* jury instruction inapplicable to this case. In *Lopez–Martinez*, defendant was arrested shortly after he illegally entered the United States through a hole in a fence at the Mexican border. He was carrying a package that contained 737.2 grams of heroin. When questioned, the defendant said he did not know what was in the package, but that he believed it contained marijuana. The judge gave the following instructions to the jury:

> The government is not required to show that the defendant knew that the substance involved was heroin. It is sufficient if the evidence establishes beyond a reasonable doubt that the defendant knowingly and intentionally imported and possessed a controlled substance with intent to distribute. You are in-

structed that marijuana is a controlled substance within the meaning of the law. 725 F.2d at 472.

■ Appellant claims that this instruction is not applicable to this case. Ramirez–Ramirez indicated knowledge of marijuana under the seat of the truck. In fact, cocaine was found under the bed of the truck. Thus, Ramirez claims he had no knowing possession of the controlled substance actually found, or of any controlled substance anywhere other than under the truck's seat. In *Lopez*, on the other hand, there was no question that Lopez had knowledge of the controlled substance actually found, since the heroin was in the exact package indicated.

Essentially, appellant is asking this court to find that he lacked an essential element of the crimes charged—i.e., knowledge—merely because the drugs were discovered about three feet back from the seat instead of directly underneath it. In other words, appellant claims that his mistake of fact as to location is significantly different than *Lopez–Martinez*'s mistake of fact as to type of substance. We find that neither mistake of fact constitutes lack of knowledge as it relates to possession of a controlled substance, and hold that the *Lopez–Martinez* doctrine applies in this case.

This court has already stated that mistake of fact regarding the kind of a controlled substance is not enough to preclude a finding of knowledge. It has also stated that mistake of fact regarding the amount of a controlled substance will not preclude a finding of knowledge. *See United States v. Klein*, 860 F.2d 1489, 1495 (9th Cir.1988); *United States v. Normandeau*, 800 F.2d 953, 956 (9th Cir.1986). By analogy, then, mistake of fact regarding the location, within a defendant's possession, of a controlled substance also cannot preclude a finding of knowledge.

To allow appellant to escape liability on such a technicality would thwart the intent of the legislators who enacted the Anti–Drug Abuse Act of 1986, which resulted in

---

**1.** This interpretation is consistent with both statutes, which require knowing possession of a controlled substance under subsection (a), and

refer to different types of controlled substances under subsection (b) for sentencing purposes only. 21 U.S.C. §§ 841, 960:

stiff mandatory sentences for drug offenders. *See* 21 U.S.C. § 841(b). During legislative debate, Senator Kennedy stated:

> The widespread use of illegal drugs is one of the most pressing problems facing our society. Illegal drugs are killing children and destroying families. Vast profits from the sale of illegal drugs have created a new criminal underworld which promotes violence and feeds on death.

132 Cong.Rec. S14282 (daily ed. Sept. 30, 1986). His remarks have been called "typical of Congress' concern." *United States v. Hoyt,* 879 F.2d 505, 513 (9th Cir. 1989). Congress's effort to stem the flow of drugs into our country would be wholly ineffective if one could exonerate oneself by claiming knowledge of drugs in one's bedroom rather than one's kitchen, one's garment bag rather than one's briefcase, or one's coat pocket rather than one's pants pocket.

Appellant's remaining arguments are not persuasive. First, appellant claims that the jury should have been instructed on the "lesser included offense" of attempted possession of less than fifty kilograms of marijuana. Appellant's theory is that if the jury had found he had no knowledge of the 356 kilograms of cocaine, they could have convicted him on this significantly lesser charge. However, as this opinion discusses, if the jury found that appellant had knowledge of *any* controlled substance in his possession, they could convict him of the stated charges. They did so. Moreover, as the district judge asserted, it is nonsensical to give an attempt instruction for a completed crime.

Second, appellant claims that jury affidavits should be admitted to show that the jurors did not believe Ramirez–Ramirez knew he had cocaine rather than marijuana in his possession. Again, this finding would not affect the verdict or the sentence in this case. Thus, we do not reach the issue whether such affidavits were admissible.

\* The panel finds this case appropriate for submission without oral argument pursuant to Ninth

## CONCLUSION

We find that appellant's distinction between *Lopez–Martinez* and the present case is strained and insignificant. The district judge was correct in giving the jury a *Lopez–Martinez* instruction, and allowing the jurors to convict Ramirez–Ramirez if they found he had knowing and intentional possession of any controlled substance with intent to distribute. The jury's verdict of guilty was drawn from permissible inferences and was supported by substantial evidence, including appellant's concerted effort to flee from authorities. Thus, we find no error in the district court's interpretation and application of *Lopez–Martinez.*

AFFIRMED.